UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:

MAURA JEFFERS,

    Plaintiff,

vs.

KERZNER INTERNATIONAL HOTELS
LIMITED, a Bahamian company; and
KERZNER INTERNATIONAL BAHAMAS
LIMITED, a Bahamian company; KERZNER
INTERNATIONAL RESORTS, INC., a Florida
corporation; HARBORSIDE AT ATLANTIS
DEVELOPMENT LIMITED, a Bahamian company;
HARBORSIDE AT ATLANTIS MANAGEMENT
LIMITED, a Bahamian company; HARBORSIDE
RESORT VACATION OWNERSHIP
ASSOCIATION LIMITED, a Bahamian company;
BROOKFIELD ASSET MANAGEMENT, INC., a
Canadian corporation; BROOKFIELD HOSPITALITY
PROPERTIES, LLC., a Delaware company; STARWOOD
HOTELS & RESORTS WORLDWIDE, INC., a Maryland
corporation;VISTANA SIGNATURE EXPERIENCES, INC.,
a Delaware corporation;VISTANA VACATION OWNERSHIP,
INC., a Florida corporation;

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Maura Jeffers, sues Defendants for damages and alleges:

**Jurisdiction and Venue**

1. This is a personal injury action for damages in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interst and costs.

2. At all material times, Plaintiff, Maura Jeffers, is and was a United States citizen residing in Manalapan, New Jersey.

1

3. Complete Diversity exists between the Plaintiff and all Defendants, in that none of the Defendants is a citizen of, incorporated in or formed in New Jersey, or has its principal place of business in New Jersey, or if a limited liability company, has any member who is a citizen of New Jersey, incorporated in New Jersey or has New Jersey as its principal place of business in the United States.

4. All foreign (outside of the United States) corporations sued as Defendants herein do substantial systematic and continous business in the United States and do substantial business in Florida within the meaning of F.S. 48.193, and so much in Florida that Florida is or would be considered their home office in the United States, while all United States business entity Defendants do substantial systematic and continuous business in Florida within the meaning of F.S. 48.193.

5. **Overview of Ownership and Management of the Harborside at Atlantis Resort, where Injury to Plaintiff Occurred**: The Plaintiff was injured at The Harborside at Atlantis Resort ("the Resort"), on Paradise Island, Nassau, Bahamas on May 21, 2013. To understand the reason for suing the present Defendants in this jurisdiction, the following is an abbreviated review of the Resort's recent ownership and management:

   a. Atlantis Paradise Island and Harborside at Atlantis resorts grew out of what was originally part of the Paradise Island Hotel and Casino, which opened in 1968 and was owned by Merv Griffin.

   b. That property was purchased by companies owned and controlled by South African hotel magnate Sol Kerzner: **Kerzner International Hotels Limited** ("**Kerzner International Limited**"), f/k/a Sun International Hotels Limited and/or Defendant, **Kerzner International Bahamas Limited** ("**Kerzner Bahamas**"), f/k/a Sun

    International Bahamas Limted. (Both companies above, when not referred to individually are collectively referred to as "**Kerzner International**.") The Kerzner International Defendants' agent and joint venturer in the United States was and still is **Kerzner International Resorts, Inc.**, a Florida corporation, which does business in the United States, with its principal place of business in the United States at 1000 South Pine Island Road, Plantation, Florida 33324.

c. The new Kerzner resorts on Paradise Island opened officially in 1998, and the property's name eventually was changed to Atlantis.

d. On or about 2001 the owner of the Resort had become Harborside at Atlantis Joint Venture Limited, a holding company of **Harborside at Atlantis Development Limited ("Harborside Development")** and **Harborside at Atlantis Management Limited ("Harborside Management")**. Even though the property was owned by the joint venture, the only seller identified for the time share purchasers was and remained only one of the joint venturers, **Harborside Development**. Moreover, the contracts for management of the Resort identified another company, **Harborside Resort Vacation Ownership Association Limited ("Harborside Vacation Ownership Association"),** as responsible for hiring **Harborside Management** to manage the resort. Both Harborside Development and Harborside Management maintained offices in the United States at 1000 S. Pine Island Road, Plantation, Florida, 33324, at the offices of their agent and joint venturer in the United States, Kerzner International Resorts, Inc.

e. The property belonged to the joint venture companies until late 2011, but as part of a $1.75 Billion debt restructuring, Kerzner International lost its ownership, and

      ownership of the resort and its properties was handed over to **Brookfield Asset Management, Inc. ("Brookfield")**[1], the Resort still was managed by **Harborside at Atlantis Management Limited ("Harborside Management").**

f. On May 21, 2013, the Plaintiff was injured at the Resort, the Resort property:

    i. Owned by **Brookfield** and **Harborside Resort Vacation Ownership Association Limited**, through and

    ii. **Harborside Development**, and was managed and operated by:

        1. **Harborside Resort Vacation Ownership Association Limited**; and

        2. **Harborside Management** in partnership with and under the direction and control of

        3. The **Kerzner International companies**

g. In the spring of 2014, the resort completed a $1.95 billion recapitalization, which included a $195 million infusion from owner Brookfield, as well as $1.75 billion from a group of other lenders. Marriott International provided a $100 million mezzanine loan as part of the package. Marriott International's $100 million loan is a junior loan to Brookfield, but as part of the lending package, Marriott International also reached a franchise agreement for Atlantis to become part of Marriott's Autograph Collection.

---

[1] Upon information and belief, **Harborside Development** retained ownership, with **Brookfield** taking all stock and control of the business, with **Harborside Development** remains as the record owner and remaining as the one identified as the seller to purchasers of time shares. In conducting their business, **Brookfield** is the principal and has consented to **Harborside Development** acting as its agent, **Harborside Development** likewise having who consented to act on behalf of **Brookfield** in their activities with regard to the Resort.

h. In September of 2014, Brookfield established a new management company, **Brookfield Hospitality Properties, LLC, a Delaware Limited Liability Company** ("**Brookfield Hospitality**"), doing business in Florida at 1000 S. Pine Island Road, Plantation, Florida, 33324, to manage the Resort. While the management company itself was new, it was made up of the same people who had been operating the resort. "Our view was that we wanted to bring the management in-house to **Brookfield**, but we wanted to do it using the expertise of the people who had been running the property," stated Andrea Balkan at the time, who was the managing partner at the time of a **Brookfield** subsidiary that includes Atlantis in its holdings. This ended Mr. Kerzner and his companies' association with the Atlantis resort properties. By October 2014, Atlantis and its related properties and resorts were integrated into the Marriott system, becoming a member of Marriott International's Autograph Collection Hotels, which includes a marketing partnership with the brand in order for guests to earn or redeem Marriott points or credits.

i. In 2015 and 2016, Marriott International merged with **Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), a Maryland corporation,** doing business in Florida at 9002 San Marco Court, Orlando, Florida, 32819. Starwood approved the spin-off of **Vistana Signature Experiences, Inc. ("Vistana"), a Delaware corporation**, with its principal place of business at 9002 San Marco Court, Orlando, Florida, 32819. Under the agreement **Vistana** has the exclusive right to operate its vacation ownership business under the Westin and Sheraton brands, with **Starwood** to concentrate on its lodging management and franchise business,

keeping Starwood consistent with its longstanding asset-light strategy. However, with respect to the Resort, they are joint venture partners.

j. From the Vistana Harborside at Atlantis (the Resort) website (https://www.vistana.com/about-vistana): "**Vistana™ Signature Experiences, Inc**. an operating business of ILG, Inc.[2] designs, builds, manages and maintains resort properties under the Westin and Sheraton brands, ensuring the highest quality standards. Through its exclusive license agreements, it will continue to develop products primarily within these two signature brands. By leveraging these highly recognizable brands, plus Gold status in the industry-leading Starwood Preferred Guest (SPG) program, **Vistana** drives value for customers by delivering exceptional levels of service and programming that are unique to the brands and distinct in the market." Vistana also states to its shareholders that it is "joint veturer partners with respect to our Harborside Resort at Atlantis."

k. Therefore, at the time of filing, the Resort was owned and operated/managed by the following joint venturers:

1. **Brookfield**, which owns and oversees the assets of Atlantis, as it has delegated the ownership to
2. **Vistana**, in a joint venture owner with
3. **Starwood**, who had as their operator/manager and joint venture:

---

[2] Interval Leisure Group was created in 2008 following a spin-off from IAC (IAC operates more than 35 leading and diversified Internet businesses across 37 countries) and was renamed ILG in October 2016.

    a. **Brookfield Hospitality Properties, LLC ("Brookfield Hospitality Properties"),** a Delaware company, with its principal place of business doing business in Florida at 1000 S. Pine Island Road, Plantation, Florida, 33324.

    b. **Harborside Resort Vacation Ownership Association Limited,** a Bahamian company, with its principal place of business at 9002 San Marco Court, Orlando, FL 32819;

    c. **Harborside Management**; and

    d. **Vistana Vacation Ownership Inc**., a Florida corporation, with its principal place of business at 9002 San Marco Court, Orlando, FL 32819.

6. Venue is proper in this District because the Kerzner International Defendants, Brookfield and Brookfield Hospitality Properties' principal place of business in the United States is in the District and pursuant to the following: President Obama signed the Federal Courts Jurisdiction and Venue Clarification Act of 2011 into law on December 7, 2011, and the act took effect on January 6, 2012.  28 USC 1391(b)(3) directs that venue for both diversity and federal question matters shall fall back to a judicial district "in which any Defendant is subject to the court's personal jurisdiction with respect to such action," and all defendants are subject to the jurisdiction of this court.

## Liability and Damages

7. At all material times, Defendants, either alone or in conjunction with each other, owned, operated and/or controlled the operation of the Resort.

8. On or about May 21, 2013, Defendants, by and through their agents, employees, servants, and/or predecessors in interest had exclusive dominion, possession and control of the room wher plantiff was staying.

9. On or about May 21, 2013, Plaintiff, Maura Jeffers, was lawfully on the premises at the Resort.

10. Maura Jeffers was staying at the Resort as a guest of a patron to the Resort and his wife.

11. At approximately 11:35 p.m., she went to use the bathroom in their room and fell due to a puddle on the floor from the air conditioner leaking from the ceiling, injuring her shoulder and knee.

12. The Defendants allowed their name, trademark, and reputation to be associated with the the Resort, thereby representing to the world and the general public, including the Plaintiff, that the Resort's operation and management complied with the Defendants' self-lauded high standards of quality and care.

13. At all material times, Defendants owed Plaintiff a duty to maintain the entire premises, in a reasonably safe condition for invitees lawfully on its premises.

14. At all material times, Defendants owed a duty to Plaintiff to such precautions as were reasonably necessary to protect lawful invitees from foresseeable acts of harm on or about the Defendants' premises, and to warn lawful invitees of any dangers of which Defendants knew or should have known.

15. Despite Defendants' duty to maintain its premises in a reasonably safe condition and its duty to warn guests of danagerous conditions thereon, Defendants failed to take reaonsble precautions for the safety of invitees lawfully on its premises and negligently breached their duties to these class of persons, including Plaintiff, in the following way: having been

notified that the air conditiong unit was malfunctioning, leaking and dripping, and despite having notified the Plaintiff's employer that the air conditioner was fixed, it was not, and was not properly fixed until after Plaintiff suffered her fall from the water that the air conditioner dropped on the floor.

16. As a result of the negligent and grossly negligent acts and omissions of Defendants, the Plaintiff, Maura Jeffers, suffered in the past and will suffer in the future, loss, injury and damages, including bodily injury and the pain and suffering resulting therefrom; extreme mental anguish; disfigurement; disability; loss of earning capacity; loss of capacity for the enjoyment of life; and costs and expenses for medical care and treatment, including physicians' care, hospital care, therapeutic care, and medications.  More specifically, Plaintiff suffered injuries including multiple complex tears of the posterior horn of the medial meniscus of her left knee and a tear in her left arm/shoulder of the distal supraspinatus tendon and of the subscapularis tendon. There was also some irregularity of the anterior glenoid labrum. On September 16, 2013, surgery was performed to repair the meniscus and the surgeon did what he could to stabilize the knee and make it functional. Left shoulder surgery was performed on June 30, 2014, which included arthroscopic debridement of labrum and biceps tenotomy with major synovectomy, arthroscopic lysis of adhesions with manipulation, arthroscopic subacromial decompression, and lateral clavicle resection. On April 26, 2016, a second left knee surgery was performed.  Surgical intervention included a medial and lateral meniscectomy with debridement of the chondral flap.

17. Because Defendants, after having been notified that the air conditiong unit was malfunctioning, leaking and dripping, did not fix it, but instead knowingly notified the

Plaintiff that the air conditioner was fixed when it was not, this was gross negligence on Defendants' part entitling Plaintiff to punitive damages.[3]

18. No Release/Waiver: Ms. Jeffers did not sign any registration forms.  No one, who signed registration forms for the group she was in, had any express authority or implied authority from her to agree on her behalf to a release/waiver clause or a jurisdiction clause.  She was aware of the husband of the couple for whom she was a guest checking the party in, but was never informed by him, nor did any Defendant ever communicate to her, that there was any release/waiver clause or a jurisdiction clause included in the Resort's registration forms, and she was never asked by anyone at the Resort if the husband had any authority to act on her behalf, nor did she ever indicate to anyone that the husband had any authority to waive any of her rights, to release anyone, or to agree to jurisdiction in the Bahamas were she to be injured there by any Defendant's negligence.  Moreover, through numerous court cases in the Bahamas and the United States in which Defendants' registration terms have been at issue, Defendants are on notice to ask all guests in a party whether someone registering that party has been given authority to waive any of their rights, or to release anyone, or to agree to jurisdiction in the Bahamas, but even so, they have chosen not to communicate these terms to the guests of the patron at registration, and in this specific instance no one on behalf of any of the Defendants spoke up or told her anything about a waiver or release, although she was in the proximity of the registration desk at the time. The Resort also displayed no signs warning Plaintiff about any of these provisions, nor did the Resort communicate any warning to Plaintiff in any form of communication at any time

---

[3] Punitive Damages are proper to plead upon appropriate allegations in the initial complaint in this jurisdiction. *Cohen v Office Depot Inc.,* 184 F.3d 1292, 1299 (11th Cir. 1999), *vacated on other grounds,* 204 F.3d 1069 (11th Cir. 2000).

that the registration form had her giving up any rights, releasing anyone or agreeing to jurisdiction.

WHEREFORE, Plaintiff, Maura Jeffers, demands judgment for damages, punitive Damages, and costs against the Defendants.

### DEMAND FOR JURY TRIAL

PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated this 31st day of March, 2017.

Respectfully submitted,

PETER M. COMMETTE, P.A.
Attorney for Plaintiff
1323 Southeast 3rd Avenue
Fort Lauderdale, FL 33316
Phone: 954-764-0005
Fax: 954-764-1478
Email: PMC@commettelaw.com
Secondary Email: pmcommette@aol.com
Secondary Email: Paralegal1@commettelaw.com

By:     */s Peter M. Commette*
PETER M. COMMETTE, ESQ.
Florida Bar No. 350133